IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SALLIE and<br>MELINDA PERKINS,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN LYNK, individually and as an<br>officer of the Midland Borough Police<br>Dept., et al.,<br><br>Defendants. | Civil Action No. 10-456 |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant the Borough of Midland ("Borough") and one individual Defendant, Officer Ronald Lutton, have moved for summary judgment ("Motion").[1] While Plaintiffs recognize that the legal test for ultimate liability against a municipality is difficult to satisfy, the Borough cannot succeed on its Motion. The facts which the Borough submits are irrelevant, immaterial, and inadmissible. The facts which the Borough ignores create a multitude of jury issues. The Borough's Motion should be denied, and it should be required to proceed to trial.

---

[1] In addressing the Borough's Motion for Partial Summary Judgment, Plaintiffs will respond in particular herein to Defendants' Brief in Support of Defendants' Motion for Partial Summary Judgment ("Defs' Brief"), Doc. No. 39, and the Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Partial Summary Judgment ("Defs' Stmt. of Facts"), Doc. No. 40. Plaintiffs note that three Officer Defendants – Tooch, Lynk and Hrubovcak -- do not contest their liability through the filing of a summary judgment motion.

I.   <u>Argument</u>

    A.   The Summary Judgment Standard of Decision
Requires Only the Production of Genuine
<u>Disputes of Material Fact by the Non-Moving Party</u>

To obtain summary judgment, the Borough must show that the relevant, material evidence is undisputed, and can only be viewed by a reasonable jury in a way that is favorable to it. In opposing summary judgment, Plaintiffs here wish to emphasize that they need only submit material evidence by which a jury could find in their favor, and which, by that characteristic, would show that the evidence cannot be viewed in only one way. In addition, as the non-moving parties, Plaintiffs benefit from any inferences to be drawn from the evidence.

> Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. <u>See</u> F.R.C.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

<u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 130 n. 6 (3d Cir. 2001). The record is replete with facts regarding the Borough's liability which create genuine disputes, as set forth in more detail below.

    B.   The Standard for Municipal Liability
<u>Allows a Verdict Against the Borough at Trial</u>

The law governing municipal liability for violations of federal constitutional rights is well established. Among the leading cases in which the Supreme Court of the United States established and refined the legal standards for municipal liability is <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989). The United States Court of Appeals for the

Third Circuit has interpreted <u>City of Canton</u> on a number of occasions.

> Municipal liability can be predicated upon a failure to train. <u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S.Ct., 1197, 103 L.Ed.2d 412 (1989). However, a municipality is only liable for failing to train when that "failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" <u>Colburn, II</u> at 1028 (quoting <u>City of Canton</u>, 489 U.S. at 388, 109 S.Ct. 1197).
>
> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983 . . . . Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality -- a "policy" as defined by our prior cases -- can a city be liable for such a failure under § 1983.
>
> <u>City of Canton</u>, 489 U.S. at 389, 109 S.Ct. 1197. Therefore, not all failures or lapses in training will support liability under § 1983. Moreover, "'the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" <u>Colburn II</u>, 946 F.2d at 1028 (quoting <u>City of Canton</u>, 489 U.S. at 391, 109 S.Ct. 1197). In <u>City of Canton</u>, the Court stressed that a plaintiff asserting a failure to train theory is "required to prove that the deficiency in training actually caused [the constitutional violation, i.e.,] the [police custodian's] indifference to her medical needs." <u>City of Canton</u>, at 391, 109 S.Ct. 1197.

<u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 324-25 (3d Cir. 2005) (quoting <u>City of Canton</u>).

In short, plaintiffs seeking trial on a claim of municipal liability need evidence of deliberate indifference to the federal constitutional rights of citizens, which has the effect of a policy or custom, and which can be considered to have caused the violations in question. As Plaintiffs show below, the Borough's own evidence cannot be credited for a number of reasons. In addition, the Borough ignores Plaintiffs' evidence, which is more than sufficient to defeat its summary judgment motion under the governing standards.

C.  Much of The Borough's Evidentiary
    Submissions About Plaintiffs Are Inadmissible

As stated above, the applicable legal test for municipal liability for the constitutional violations Plaintiffs allege is well known. In applying this test, the focus, of course, must be on the municipality's conduct, since the principal issue is the customs, policies, and practices of the municipality. Accordingly, evidence about the distant backgrounds of Michael Sallie is irrelevant, immaterial, and unduly prejudicial, and therefore inadmissible. Yet the first, and repeated, evidence they present in their Concise Statement of Material Facts, consists of information about such matters.

Inadmissible evidence is not valid on summary judgment. Fed.R.Civ.P. 56(c)(2). Irrelevant evidence is inadmissible. Fed.R.Ev. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Ev. 401. Credibility; state of mind; and reasonableness, are not factors to be resolved on summary judgment. See, respectively, Country Floors, Inc. v. Gepner and Ford, 930 F.2d 1056, 1061-62 (3d Cir. 1991); Young v. Quinlan, 960 F.2d 351, 360 n.21 (3d Cir. 1992); Hampton v. Borough of Tinton Falls, 98 F.3d 107, 114 (3d Cir. 1996).

The Borough provides no authority for the proposition that the constitutional rights at issue in this case are diminished, eliminated, or even affected, based on evidence that the citizen in question has a prior criminal offense, or has worked "under the table." Defs' Stmt. of Facts ¶¶ 1-6. The same argument applies to the racial and statistical makeup of their neighborhood. Id. ¶¶ 20-21. The most likely explanation for this absence of authority is that such authority does not exist. The Court is left to

consider the purpose for including such information.

At the appropriate point in the case Plaintiffs will seek rulings from the Court about the admissibility of such evidence. Plaintiffs argue now that such evidence is inadmissible for summary judgment purposes. The Borough is simply making a craven attempt to influence the Court that Michael Sallie is a bad person, and so his federal constitutional rights should therefore be diminished in this instance. In a summary judgment motion concerning the adequacy of police training, such evidence is inadmissible.

D.   Evidence About the Crowd Is Inadmissible

Similar to the way the Borough presents evidence about Plaintiff Sallie, the Borough presents evidence about a crowd of people in the vicinity of the arrest on May 8, 2009. Such evidence is irrelevant to the issues, and is a further attempt to influence the Court away from the egregious conduct demonstrated by the evidence.

First, the relevance of any evidence about crowd behavior on May 9, 2009, when addressing the question of the constitutional adequacy of Borough training and supervision, is almost nil. Second, even considering the Borough's own evidence, there is none that even suggests that Sallie was at his neighbor's party, or that he was among the crowd; indeed, there is no evidence that he ever left his porch. He addressed no remarks to the crowd. See Doc. No. 44, Plaintiffs' Appendix in Support of Motion for Partial Summary Judgment, Ex. 7, Transcript of July 31, 2009 Preliminary Hearing at 20:9-13, 38:25 – 39:4; and Ex. 4, Tooch Depo. Tr. at 37:23 – 38:1.

Furthermore, even apart from the evidence about Sallie, there is no evidence of any genuine threat associated with the crowd. The officers were not assaulted; they

were not even touched. No one threw any objects. No one brandished any objects. At deposition, none of the Officer Defendants testified that the crowd made any verbal threats to them.

The Borough's true motive in presenting these statements is transparent -- it is an attempt to conjure up an atmosphere of threat to the Officer Defendants which might justify their actions against Sallie. Such evidence instead shows the contrary, and so supports Plaintiffs' position in opposing summary judgment for the Borough. The Officers Defendants had no one in charge. See Plaintiff's Response to Defendants' Concise Statement of Material Facts ("Pls' Resp. to Defs' Facts"), ¶ 68. They had no idea how to handle Sallie's comments. They had no idea how to handle Melinda Perkins. They drew up charges for Sallie's parents, who are in their seventies, because Mr. and Mrs. Sallie objected to Michael's treatment. Pls' Resp. to Defs' Facts ¶ 73. They had no idea how to legitimately handle the crowd. The Officers were so confused, uncertain, and panicked, because of not knowing how to react, that they lashed out recklessly, harmfully, and illegally. All of these facts should be presented to a jury, which is the proper body to consider the propriety of the Borough's conduct in preparing its officers for what can only be considered routine duty.

    E.    Certain Key Facts on Which the Borough Relies Are Not Supported by the Record

To succeed on summary judgment, the Borough must present evidence that its level of supervision is sufficient such that no reasonable jury could find otherwise. The law governing municipal liability for violations of federal constitutional rights indeed places a high bar for a factfinder's determination of such liability. On the record the Borough has currently placed before the Court, such certainty cannot be found.

Certain facts which the Borough presents in its favor simply are not supported by the record. For example, in a particularly telling passage about its police operations, the Borough asserts that "[o]fficers receive weekly legal update materials from the Chief." Defs' Brief at 12. This is misleading. There is evidence that Chief D'Itri prints out for inclusion in a central binder, for example, some e-mails from Allegheny County on recent crimes, and a bulletin on the outcomes of recent criminal cases. But such information is not distributed to the officers; no procedure exists to insure officer review of the information; and the chief he has had to discipline officers on several occasions for failing to comply with directives in the binder. See Pls' Resp. to Defs' Facts, ¶ 64. The Borough also asserts in its Brief that officers get on-the-job training by riding with the chief. Defs' Brief at 12. In contrast, the record supports only that Chief D'Itri rode along with Lutton following his hiring. See Pls' Resp. to Defs' Facts, ¶ 58. Moreover, there is no description about anything that occurred during any ride-alongs, which pushes such evidence into irrelevance.

In a similar vein, the Borough tries to transform supervisory review of affidavits of probable cause into "training." Defs' Brief at 12. The same rebuttals raised above apply to this point. First, such "feedback" is unstructured, undefined, and ambiguous. Such information hardly leads to an unassailable conclusion that the Borough's customs and policies are adequate. Moreover, any such "feedback" on the drafting of an affidavit of probable cause precisely embodies the problem at issue: it occurs after the unlawful arrest has taken place. "Training" that tolerates violations of citizens rights while the police use trial-and-error to learn their trade, with citizens' rights in the balance, is constitutionally inadequate conduct from a municipality.

F.  A Fuller Picture of the Borough's
    Conduct Precludes Summary Judgment

The facts the Borough presents in support of its Motion for Partial Summary Judgment are vague, amorphous, and unconnected to the relevant events. Once the Court considers a subset of the totality of other facts, the Borough's inability to obtain summary judgment will be revealed. When considering the facts surrounding the chief of police's conduct and duties, the Court will find distance and limitation. When considering the facts surrounding the mayor's conduct and duties, the Court will find uncertainty, ignorance of the facts and law, and indifference. When considering the facts surrounding the Officer Defendants' conduct, the Court will find more ignorance of the law, and more confusion and uncertainty, and unjustified panic.

Plaintiffs submit the following facts in bullet point form, which, it is hoped, is a form which most quickly and precisely captures some of the facts which preclude summary judgment for the Borough. All of the references below are to documents found at Doc. No. 44, Plaintiffs' Concise Statement of Material Facts in support of their Motion for Partial Summary Judgment, and attached Appendix (for Exhibits 1 to 12), or to Plaintiffs' Response to Defendants' Concise Statement of Material Facts, and the Supplemental Appendix (for Exhibits 13 to 16) filed with this Memorandum.

1.  Chief D'Itri

- Chief D'Itri admitted during his deposition that he has "basically" no power to hire, fire or promote an officer within his own department. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 48:2-6.

- Neither the Borough, nor the Department, provide any training to its Officers outside of their basic ACT 120 requirement. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 69:16 to p. 70:11.

- Specifically, the Borough did not provide training to the officers in question on: 1) making arrests or otherwise seizing criminal suspects; 2) determining whether or

not there is probable cause for an arrest or the seizure of a criminal suspect; 3) the use of force; 4) police abuse and misconduct; or 5) state and federal constitutional law. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 69:16 to p. 72:6.

- The only information the Borough provides its police force with regard to performance is a copy of the Department's Policies and Procedures Manual ("Manual"), which may contain updates in the form of email bulletins and articles compiled by Chief D'Itri from various sources. Upon hiring, the Department provides each new hire with a copy of the Manual in a binder. The Manual includes the Departments procedures regarding arrests, the use of force continuum, and Taser use. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 63:18 to p. 64:12.

- Neither the Borough, nor the Department, does anything to insure that the new hire has read and understood the policies and procedures. Chief D'Itri admitted that he could not confirm if any of the officers in question have ever even opened the Manual. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 64:7-24.

- In addition to the Manual, Chief D'Itri maintains two binders containing updates from various sources on topics such as legal developments, changes in criminal procedure, and the like. Chief D'Itri admitted that no procedure exists to confirm that Midland officers have reviewed information in the update binders, and that he has had to discipline officers on several occasions for failing to comply with directives therein. See Pls' Exhibit 9, D'Itri Depo. Tr. at p. 57:24 to p. 59:5.

- No such updates were provided to Midland officers prior to D'Itri being named Acting Chief in May 2008. Pls' Exhibit 9, D'Itri Depo. Tr. at 59:10 to 60:5.

    2.    Midland Borough Mayor Angela Adkins

- Mayor Angela Adkins is the head of the chain of command within the Midland Borough police department. See Adkins Depo. Tr. at 14:14-17 and D'Itri Depo. Tr. at 61:5-19.

- Although the position of Mayor of Midland Borough is a full-time position, Mayor Adkins does not work at the Borough building everyday. She stops "maybe once" per week to collect her calls. Sometimes she does not go to the Borough building at all during a given week. See Adkins Depo. Tr. at 10:13 to 11:11.

- When asked at deposition if she possessed any educational background to qualify her as Mayor of Midland Borough, Mayor Adkins responded "no." See Adkins Depo. Tr. at 11:12-14.

- When asked at deposition what qualifications she had to recommend the recommend the hiring of a police officer to Midland Borough's Council, Mayor Adkins replied "basically none." See Adkins Depo. Tr. at 15:16-24.

- Mayor Adkins admitted that she is "not familiar" with Midland's use of force continuum and that she does not even know what it is. See Adkins Depo. Tr. at 20:5-17.

- Mayor Adkins did not review any of the background checks performed when Bongivengo was Chief. Her belief is that Bongivengo did not feel she was "privileged" to do so. See Adkins Depo. Tr. at 34:20 to 36:20.

- Mayor Adkins is not aware of the pre-employment history of the four defendant officers in this matter. See Adkins Depo. Tr. at 37:2-5.

### 3. Officers Tooch, Lynk, and Hrubovcak

- Tooch testified at Sallie's preliminary hearing that there was probable cause to arrest Sallie for obstruction based solely on Sallie stating "you're not right" to the police present. See Pls' Exhibit 7, Transcript of July 31, 2009 Preliminary Hearing at p. 41:2-4.

- Tooch admitted at his deposition that Sallie "had every right" to make the comments toward police that he did. See Pls' Exhibit 4, Tooch Depo. Tr. at p. 37:14-20. See also Exhibit 3, Lynk Depo. Tr. at p. 46:10-14.

- Tooch testified at his deposition that Sallie was "absolutely" within his rights to make comment to the police, "if there were just two people [Sallie and Perkins] around or if – if there wasn't a situation at hand, absolutely he had every right to . . ." See Pls' Exhibit 4, Tooch Depo. Tr. at p. 37:14-20.

- Tooch admitted during his deposition that Sallie was not making comments towards the crowd, but rather to Tooch himself. See Pls' Exhibit 4, Tooch Depo. Tr. at p. 37:23 to 38:1.

- The consistent testimony of the Defendant Officers is that there was no ranking officer or officer who was in charge while the events in question were occurring. See Pls' Exhibit 3, Lynk Depo. Tr. at p. 106:10-14; and Exhibit 6, Hrubovcak Depo. Tr. at p. 46:6-13.

- When Sallie's parents, James and Mary Sallie, each of whom was over 70 years old at the time, went to the Borough building on the night of the incident to check on Sallie, Hrubovcak went so far as to draft charges against them for (1) failure of disorderly persons to disperse, (2) obstruction of justice, and (3) riot. See Pls' Exhibit 11, May 8, 2009 Arrest and Booking Detail Page, M0026 to M0029.

- The Borough continued to employ Tooch during a period of more than a year during which his driver's license was suspended, including the night of the incident in question. Pls' Exhibit 9, D'Itri Deposition Tr. at p. 151:3 to p. 153:7.

- Tooch was suspended on at least three separate occasions by the Department

for failure to follow department procedures and guidelines during 2008 alone. These violations included failing to appear at court hearings, using a Taser on a raccoon, and failing to complete citations. Pls' Exhibit 4, Tooch Depo. Tr. at p. 95:7 to p. 110:5.

- Tooch was suspended by the Borough on at least 3 additional occasions during 2009 and 2010 prior to being terminated for cause in August 2010 for failing to maintain a valid drivers' license and failure to follow police rules and procedures. Pls' Exhibit 4, Tooch Depo. Tr. at p. 110:15 to p. 124:21.

- Tooch was also been suspended and later terminated by White Township, Pennsylvania, Police Department in 2007 for failing to follow police procedures. Pls' Exhibit 4, Tooch Depo. Tr. at p. 127:8 to p. 130:15.

- Lynk was arrested and charged with malicious assault in June 2009 in Hancock County, West Virginia, for assaulting a patron in the parking lot of a nightclub. Pls' Exhibit 3, Lynk Depo. Tr. at p. 147:5-7.

- Only one of the officers in question, Lutton, is still actively employed by the Borough. Hrubovcak currently resides in Vermont, and Lynk and Tooch were both suspended and subsequently terminated by the Borough for misconduct, although Lynk technically remains on the Department's roster due to a settlement he negotiated during a grievance process. Pls' Exhibit 4, Tooch Depo Tr. at p. 149:10-25; Exhibit 3, Lynk Depo. Tr. at p. 148:9 to p. 152:18; Exhibit 6, Hrubovcak Depo. Tr. at p. 36:11 to p. 37:4; and Exhibit 5, Lutton Depo. Tr. at p. 18:10-20.

These facts show inattention, indifference, and inaction with regard to what the Police Department and its officer know, and how they conduct themselves with regard to basic constitutional rights, to a degree that the associated choices by Borough officials can only be considered deliberate. These choices led directly to the harm Plaintiffs allege. Indeed, as set forth above, the Borough's failure to determine that Officer Tooch's driver's license was suspended allowed him to participate in the arrests in question. In sum, these facts show that there are genuine disputes of material facts with regard to the Borough's liability, and the Borough should be required to justify its actions before a jury.

11

G. <u>Plaintifffs Will Agree to Dismiss Officer Lutton</u>

Plaintiffs' preliminary investigation before the filing of the Complaint indicated that Officer Ronald Lutton was potentially liable for some portion of the unconstitutional conduct which Plaintiffs experienced. While Lutton was on the scene on the night of the arrests and confinement, and accompanied the other Officer Defendants, evidence collected through discovery has not revealed his liability to the same extent as the other Officer Defendants. Accordingly, Plaintiffs have agreed to voluntarily dismiss Officer Lutton from the Complaint, and will file or cooperate in filing the necessary stipulation.

II. <u>Conclusion</u>

In accordance with the foregoing, the Borough's Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

Cohen Seglias Pallas Greenhall
& Furman

/s/ Patrick Sorek
Patrick Sorek
Pa. ID No. 41827
Christopher H. Cafardi
Pa. ID No. 90904
Gulf Tower, 18th Fl.
707 Grant Street
Pittsburgh, Pennsylvania 15219
412-434-5530
psorek@cohenseglias.com
Attorneys for Plaintiffs

#1398559-v1 50401-0001